1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY WAYNE JONES, CDCR #D-55894,<br><br>                                    Plaintiff,<br><br><br>                    vs.<br><br><br><br>STUART J. RYAN, et al.,<br><br><br><br>                                    Defendants. | Civil No.    07-1019 J JMA<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS;**<br><br>**(2) DISMISSING DEFENDANTS TORRES AND BAILEY PURSUANT TO FED.R.CIV.P. 4(m); AND**<br><br>**(3) ORDERING REMAINING DEFENDANTS TO FILE AN ANSWER TO THE REMAINING CLAIMS**<br><br>**[Doc. Nos. 63, 95]** |

Plaintiff, an inmate currently incarcerated at California State Prison located in Corcoran, California, and proceeding pro se, has filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 [Doc. No. 59].  Defendants Ryan, Ochoa, Jimenez, Zills, Schommer, Ortiz, Rodiles, Mejia, Sandoval, Wells, Castaneda, Cosio, Flores, Ritter, Bell, Anadalon, Harmon, Duarte, Stratton, Price, Martinez, Valenzuela and Rangel have filed Motions to Dismiss

Plaintiff's First Amended Complaint pursuant to FED.R.CIV. P. 12(b)(6) [Doc. Nos. 63, 95]. [1]
In addition, Defendant Pegues has filed a Notice of Joinder and Joinder to Defendants' Motions
to Dismiss Plaintiff's First Amended Complaint [Doc. No. 64].

Because Defendants filed two Motions to Dismiss, one was filed after a number of newly
named Defendants had been served, Plaintiff has filed two Oppositions [Doc. Nos. 80, 96] to
which Defendants have filed a Reply [Doc. No. 83].

## I.

### PLAINTIFF'S FACTUAL ALLEGATIONS

In 2005 Plaintiff was housed at Centinela State Prison which is located in Imperial
County. (*See* FAC at 1.) On June 10, 2005, Plaintiff was awakened by his cell door being
pushed open and saw Defendants Schommer and Ortiz standing in front of his cell. (*Id.* at ¶¶
1-2.) Defendant Schommer told Plaintiff it was "count time" and Plaintiff informed Defendant
Schommer that he had fallen asleep because he was taking pain medication. (*Id.* at ¶¶ 3-4.)
Defendants Schommer and Ortiz walked away from Plaintiff's cell as Defendants Torres and
Mejia approached. (*Id.* at ¶¶ 6-7.) Defendant Wells closed Plaintiff's cell door from the control
tower. (*Id.* at ¶ 8). Defendants Schommer, Ortiz and Torres told Defendant Wells to reopen
Plaintiff's cell. (*Id.* at ¶ 12.) Defendants Schommer and Torres entered Plaintiff's cell and
began to simultaneously use oleresin capsicum (also known as " pepper spray") on Plaintiff who
was not resisting. (*Id.* at ¶¶ 14-18.)

While Plaintiff was shielding his face, he was struck on the lower left leg with a baton
by either Defendant Torres or Schommer and then struck on the right temple by Defendant
Torres. (*Id.* at ¶¶ 20-21.) Defendant Castaneda then entered Plaintiff's cell and placed Plaintiff
in handcuffs. (*Id.* at ¶ 22.) Defendant Castaneda then took Plaintiff to the shower in order to
"decontaminate" Plaintiff from the pepper spray but instead of using cold water, which is
required by regulations, Defendant Castaneda used hot water which caused Plaintiff's skin to

---

[1] While this matter was referred to Magistrate Judge Jan M. Adler , for disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and S.D. CAL. CIVLR 72.3, the Court has determined that a Report and Recommendation regarding Defendants' Motions to Dismiss is unnecessary. *See* S.D. CAL. CIVLR 72.3(a).

burn. (*Id.* at ¶¶ 23- 25.)  Defendant Zills entered the shower area and began pushing Plaintiff to the exit of the housing unit by his handcuffs. (*Id.* at ¶¶ 27-28.)  While exiting through the corridor area, Defendant Zills "ran Plaintiff face first into the corridor's brick wall." (*Id.* at ¶ 29.)  Plaintiff was then "slammed to the ground" by Defendants Zills and Torres. (*Id.* at ¶ 31.)  As Defendant Zills held Plaintiff, "Defendants Torres, Ortiz and Rodiles proceeded to take turns striking Plaintiff in the head and body utilizing their state-issued side handle batons." (*Id.* at ¶ 32.)  As Defendant Zills continued to hold Plaintiff, Defendant Mejia "walked over and kicked Plaintiff." (*Id.* at ¶ 35.)  In addition, Defendant Sandoval began "viciously [kicking] Plaintiff" in his chest "with enough force that [caused] Plaintiff to temporarily stop breathing." (*Id.* at ¶ 37.)  Defendant Castaneda began to yell in Spanish "that's it." (*Id.* at ¶ 39.)  Plaintiff claims that Defendants Castaneda, Jimenez, Bailey, Cosio, Bell and Andalon "observed Plaintiff being maliciously and wantonly beaten" but failed to intervene. (*Id.* at ¶ 40.)

Defendants placed Plaintiff in the shower to remove any signs of blood and then proceeded to take Plaintiff to the medical clinic by Defendants Torres, Jimenez and Bell. (*Id.* at ¶ 42-44.)  Plaintiff claims that Defendants Jimenez and Torres "intentionally [delayed] Plaintiff from receiving medical evaluation and treatment" by keeping Plaintiff in a holding cell for two hours inside the medical clinic. (*Id.* at ¶¶ 46-47.)  Plaintiff was later examined by medical staff and it was determined that he should be seen by the prison's physician. (*Id.* at ¶ 50.)  While Plaintiff was waiting to be seen by the prison's physician he claims that Defendants Harmon and Duarte made "obscene/vulgar statements directed at Plaintiff." (*Id.* at ¶¶ 53-54.)  Plaintiff was examined by "Doctor Naz," the prison's physician, who "sutured Plaintiff's three scalp lacerations and one left leg laceration and evaluated plaintiff as having a possible liver rupture and chest wall contusion." (*Id.* at ¶ 56.)  Defendants Stratton and Mejia videotaped Plaintiff's injuries. (*Id.* at ¶ 57.)  Defendants Ryan, Ochoa and Pegues arrived soon after and asked Plaintiff's questions regarding the incidents that led to his injuries. (*Id.* at ¶ 58.)

/ / /

/ / /

/ / /

Doctor Naz recommended that Plaintiff be immediately transferred to Pioneer Memorial Hospital ("PMH") due to his potentially "life-threatening injuries." (*Id.* at ¶ 60.) Defendants Ryan, Ochoa, Pegues and Stratton "refused to act or expedite Plaintiff's transfer to PMH and instead intentionally allowed Plaintiff's suffering condition to deteriorate." (*Id.* at ¶ 61.) At approximately 4:34 a.m. on June 11, 2005, Plaintiff was transferred to the PMH emergency room. (*Id.* at ¶ 63.) Plaintiff underwent medical examinations and testing where it was determined that he suffered from a "punctured and collapsed right lung, a minimum of four broken right ribs, three severe scalp lacerations, one left leg laceration, and multiple abrasions, bruising and swelling throughout Plaintiff's body." (*Id.* at ¶ 65.) Plaintiff claims Defendants Jimenez, Torres, Schommer, Ortiz, Zills, Rodiles, Wells, Flores and Ritter submitted "fabricated disciplinary reports against Plaintiff" to "conceal" their own misconduct. (*Id.* at ¶¶ 68-70.) Defendant Flores submitted a report indicating that he had discovered an inmate manufactured weapon in Plaintiff's cell which Plaintiff claims is a false accusation. (*Id.* at ¶ 71.)

Plaintiff was charged with disciplinary violations including assault on staff, battery on staff, battery on a Peace Officer with a weapon and attempted murder of a Peace Officer. (*Id.* at ¶ 73.) Plaintiff also claims that his property was taken by Defendants in retaliation for Plaintiff's allegations against Defendants. (*Id.* at ¶¶ 93-95.) To date, Plaintiff has yet to receive a disciplinary hearing on the rules violation report that was issued to him charging Plaintiff with attempted murder of a Peace Officer. (*Id.* at ¶ 100.) However, Plaintiff does indicate that he is being temporarily housed at Calipatria State Prison "pending court proceedings in Imperial County Superior Court." (*Id.* at 16, fn. 13.)

## II.

### DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

#### A.    Standard of Review pursuant to FED.R.CIV.P. 12(b)(6)

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's

complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

Still, every complaint must, at a minimum, plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). Facts which are alleged in the complaint are presumed true, and the court must construe them and draw all reasonable inferences from them in favor of the plaintiff. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972). Thus, where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

Nevertheless, and in spite of the deference the court is bound to pay to any factual allegations made, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Nor must the court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (citation omitted), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *see also Ileto v. Glock Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations).

/ / /

**B.      Eighth Amendment allegations - Count "1"**

**1.      Claims against Defendant Ritter**

Defendant Ritter moves to dismiss the Eighth Amendment claims against him found in Count "1" of Plaintiff's First Amended Complaint for failing to state a claim upon which relief can be granted pursuant to FED.R.CIV.P. 12(b)(6).

"After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eight Amendment." *Whitely v. Albers*, 475 U.S. 312, 319 (1986).  To assert an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must allege facts sufficient to fulfill two requirements:  one objective and one subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   Under the objective requirement, the prisoner must allege facts sufficient to show that the prison official's acts or omissions deprived him of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer*, 511 U.S. at 834.  This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety."  *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Farmer*, 511 U.S. at 832; *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Under the subjective requirement, the prisoner must allege facts that show that the defendant acted with "deliberate indifference."  *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 302-303.

In Plaintiff's First Amended Complaint he alleges that Defendant Ritter "photographed Plaintiff's external injuries" after he had been taken to the prison infirmary.  (FAC at ¶ 9.)  Later Plaintiff alleges that Defendant Ritter "submitted fabricated disciplinary reports against Plaintiff with a specific intent to retaliate and harm Plaintiff."  (*Id*. at ¶ 68.)  Based on these allegations, there is simply no factual basis to support a claim for deliberate indifference  by Defendant

1  Ritter for merely photographing Plaintiff's injuries.

2        In Plaintiff's Opposition dated January 23, 2009, Plaintiff argues that "subsequent to

3  Defendant Ritter's arrival at the prison infirmary and observation of Plaintiff's gross physical

4  condition, Defendant Ritter's official obligation and responsibility was to take reasonable

5  measures to guarantee Plaintiff's safety." (*See* Pl.'s Opp'n at 4.) However, the facts alleged by

6  Plaintiff do not demonstrate that Defendant Ritter played any role in inhibiting or delaying his

7  medical treatment.  Nor does Plaintiff provide any facts that would demonstrate that the actions

8  of Defendant Ritter caused him any further harm.  The only allegation that Plaintiff refers to is

9  the alleged fabricated disciplinary report that Defendant Ritter allegedly prepared eight months

10 after the incident.  (*See* FAC at ¶ 72.)  However, Plaintiff later admits that he has not been

11 subjected to a disciplinary hearing as a result of these alleged fabricated disciplinary reports.

12 (*Id.* at ¶ 100.)

13       Thus, Defendant Ritter's Motion to Dismiss the Eighth Amendment claims against him

14 pursuant to FED.R.CIV.P.  12(b)(6) is **GRANTED** without leave to amend.

15              **2.      Claims against Defendants Harmon and Duarte**

16       Defendants Harmon and Duarte also seek dismissal of all claims against them found in

17 Count "1" of Plaintiff's First Amended Complaint.  In Plaintiff's First Amended Complaint, the

18 allegations against these Defendants are that they made "obscene/vulgar statements directed at

19 Plaintiff that caused Plaintiff further physical and emotional distress" while he was waiting for

20 the prison's physician to examine him.  (*See* FAC at ¶ 54.)  These Defendants were not alleged

21 to be present prior to or during the incident which caused Plaintiff's injuries.

22       Verbal harassment or verbal abuse by prison officials generally does not constitute a

23 violation of the Eighth Amendment.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996)

24 (harassment does not constitute an Eighth Amendment violation); *Oltarzewski v. Ruggiero*, 830

25 F.2d 136, 139 (9th Cir. 1987) (harassment in the form of vulgar language directed at an inmate

26 is not cognizable under § 1983); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (verbal

27 threats and name calling are not actionable under § 1983).  While Plaintiff alleges in his First

28 Amended Complaint that the alleged harassment caused him additional physical injuries, he does

1    not specify what those injuries were.  Plaintiff appears to clarify this claim in his Opposition to

2    Defendants' Motion dated April 9, 2009 in which he states that the verbal harassment caused

3    him "psychological harm."  (*See* Pl.'s Opp'n at 2.)

4         The Prison Litigation Reform Act ("PLRA") states, in part, that "[n]o Federal civil action

5    may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental

6    or emotional injury suffered while in custody without a prior showing of physical injury."  42

7    U.S.C. § 1997e(e).  This provision requires "a prior showing of physical injury that need not be

8    significant but must be more than de minimus."  *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir.

9    2002).  Here, as set forth in Plaintiff's First Amended Complaint and Opposition, the only injury

10   that he claims with respect to the actions of Defendants Duarte and Harmon is a psychological

11   injury.

12        Thus, for all these reasons, the Court **GRANTS** Defendants Harmon and Duarte's Motion

13   to Dismiss the Eighth Amendment claims against them pursuant to FED.R.CIV.P. 12(b)(6)

14   without leave to amend.

15        **D.    Fourteenth Amendment Claims**

16             **1.    Due Process Claims**

17        Defendants Andalon, Mejia, Sandoval, Castaneda, Cosio, Bell, Ochoa, Price and Stratton

18   move to dismiss Plaintiff's Count "2" claims in which he alleges that his Fourteenth Amendment

19   due process rights were violated by the alleged false reports written by several of the named

20   Defendants.  For the reasons set forth below, Plaintiff's Fourteenth Amendment claims against

21   all Defendants should be dismissed as they are not yet cognizable.

22        The Due Process Clause prohibits states from "depriving any person of life, liberty, or

23   property, without the due process of law."  U.S. CONST. AMEND. XIV.  The procedural

24   guarantees of due process apply only when a constitutionally-protected liberty or property

25   interest is at stake.  *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974).  In order to invoke

26   the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty

27   interest.  *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005); *Sandin v. Conner*, 515 U.S.

28   472 (1995).  In *Sandin*, the Supreme Court "refocused the test for determining the existence of

a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).

Thus, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 125 S.Ct. at 2394. The *Sandin* test requires a case-by-case examination of both the conditions of the prisoner's confinement and the duration of the deprivation at issue. *Sandin*, 515 U.S. at 486.

The Court must determine whether Plaintiff has established a protected liberty interest. Accordingly, under *Sandin*, the Court must determine whether the alleged fabrication of disciplinary reports "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Court found there were three factors to consider when determining whether disciplinary segregation imposes atypical and significant hardship: "(1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and the length of the plaintiff's sentence was not affected." *Jackson v. Carey*, 353 F.3d 750, 755 (quoting *Sandin*, 515 U.S. at 486-87).

Here, Plaintiff admits that he has never been subject to a disciplinary hearing resulting from these alleged falsified reports. (*See* FAC at ¶ 100.) He does not allege that he was ever sentenced to administrative segregation. Instead, it appears that a criminal action was instigated in the Imperial County Superior Court against Plaintiff for the events that occurred on June 10, 2005. Plaintiff makes allegations of perjury and false reports before the Grand Jury in the

1    Imperial County Superior Court.  (*See* FAC at ¶ 103.)  Plaintiff cannot bring these claims in this

2    action while his criminal proceeding is ongoing.

3         These claims are barred by the favorable termination doctrine set forth in *Heck v.*

4    *Humphrey*, 512 U.S. 477, 486-87 (1994).  Plaintiff's claims amount to an attack on the

5    constitutional validity of his ongoing state criminal proceeding, and as such, may not be

6    maintained pursuant to 42 U.S.C. § 1983 unless and until he can show that conviction has

7    already been invalidated.  *Heck*, 512 U.S. at 486-87; *Ramirez*, 334 F.3d at 855-56.

8         "In any § 1983 action, the first question is whether § 1983 is the appropriate avenue to

9    remedy the alleged wrong."  *Haygood v. Younger*, 769 F.2d 1350, 1353 (9th Cir. 1985) (en

10   banc).  A prisoner in state custody simply may not use a § 1983 civil rights action to challenge

11   the "fact or duration of his confinement."  *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973).  The

12   prisoner must seek federal habeas corpus relief instead.  *Wilkinson v. Dotson*, 544 U.S. 74, 78

13   (2005) (*quoting Preiser*, 411 U.S. at 489).  Thus, Plaintiff's § 1983 action "is barred (absent

14   prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target

15   of his suit (state conduct leading to conviction or internal prison proceedings)--if success in that

16   action would necessarily demonstrate the invalidity of confinement or its duration."  *Wilkinson*,

17   544 U.S. at 82.

18        In this case, Plaintiff's claims "necessarily imply the invalidity" of his ongoing criminal

19   proceedings.  *Heck*, 512 U.S. at 487.  In creating the favorable termination rule in *Heck*, the

20   Supreme Court relied on "the hoary principle that civil tort actions are not appropriate vehicles

21   for challenging the validity of outstanding *criminal judgments*."  *Heck*, 511 U.S. at 486

22   (emphasis added); *see also Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1139 (9th Cir. 2005).

23   This is precisely what Plaintiff attempts to accomplish here.  Therefore, to satisfy *Heck's*

24   "favorable termination" rule, Plaintiff must first allege facts which show that the conviction and

25   sentence has already been:  (1) reversed on direct appeal; (2) expunged by executive order;

26   (3) declared invalid by a state tribunal authorized to make such a determination; or (4) called

27   into question by the grant of a writ of habeas corpus.  *Heck*, 512 U.S. at 487 (emphasis added);

28   *see also Butterfield v. Bail*, 120 F.3d 1023, 1025 (9th Cir. 1997).

1    For all these reasons, Defendants Motions to Dismiss Plaintiff's Fourteenth Amendment

2  Due Process claims found in Count "2" are **GRANTED** pursuant to FED.R.CIV.P. 12(b)(6)

3  without leave to amend.

4                    **2.    Equal Protection Claims**

5    Defendants seek dismissal of Plaintiff's Fourteenth Amendment Equal Protection claims

6  found in Count "2" of Plaintiff's First Amended Complaint. The "Equal Protection Clause of

7  the Fourteenth Amendment commands that no State shall 'deny to any person within its

8  jurisdiction the equal protection of the laws,' which is essentially a direction that all persons

9  similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S.

10  432, 439 (1985); *Shaw v. Reno*, 509 U.S. 630 (1993).

11    However, conclusory allegations of discrimination are insufficient to withstand a motion

12  to dismiss, unless they are supported by facts that may prove invidious discriminatory intent or

13  purpose. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

14  Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show

15  that the defendant "acted in a discriminatory manner and that the discrimination was

16  intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted).

17  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of

18  consequences. It implies that the decision maker . . . selected or reaffirmed a particular course

19  of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an

20  identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

21    Here, Plaintiff's First Amended Complaint is devoid of any facts to show that he was

22  discriminated against in any manner or that he was treated differently from any other class of

23  prisoners. Plaintiff's Oppositions shed no light on this issue either, other than to say that

24  Defendants had an "illegitimate desire to 'get' him." (*See* Apr. 9, 2009 Opp'n at 5.)   Thus,

25  Plaintiff has plead no facts from which the Court could find he has stated a Fourteenth

26  Amendment equal protection claim. Accordingly, Defendants' Motions to Dismiss Plaintiff's

27  Fourteenth Amendment Equal Protection claim pursuant to FED.R.CIV.P. 12(b)(6) is

28  **GRANTED** without leave to amend.

**E.     Fourth Amendment Claims - Count "3"**

Defendants move to dismiss Plaintiff's Fourth Amendment unreasonable search and seizure claims.    There are two separate constitutional violations claimed by Plaintiff with respect to his Fourth Amendment claims.  One claim for an alleged constitutional violation appears to be that Plaintiff claims his Fourth Amendment rights were violated by the mere entry of Defendants Torres and Schommer into his cell.  The second incident is a cell search conducted by Price on June 13, 2005.  (*See* FAC at ¶¶ 17-23, 93-95.)  Although prisoners enjoy some protections under the Constitution, imprisonment carries with it the loss of many significant rights.  *Hudson v. Palmer*, 468 U.S. 517, 524 (1984); *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("Loss of freedom of choice and privacy are inherent incidents of confinement."). The curtailment of certain rights is necessary to accommodate a myriad of prison objectives, chief among which is internal security.  *Id.*; *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989). A prisoner's expectation of privacy must always yield to the paramount interest in prison security.  *Hudson*, 468 U.S. at 528.  Thus, a prisoner does not have a legitimate expectation of privacy, and the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell.  *See id.* at 526, 536; *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996).  Thus, Plaintiff cannot state a Fourth Amendment claim against any Defendant for entering or searching his cell.

To the extent that Plaintiff is seeking to allege a Fourth Amendment claim against Torres and Schommer for the actions they allegedly took against him while he was in his cell, he has already brought these claims under the Eighth Amendment.  "Where an amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior,' it is that Amendment, that 'must be the guide for analyzing the complaint.'" *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)).

/ / /

/ / /

/ / /

1   In addition, to the extent that Plaintiff is seeking to bring a Fourth Amendment claim

2   related to the alleged unauthorized taking of his property by Defendant Price, the Court had

3   granted Defendants' previous Motion to Dismiss and denied Plaintiff leave to amend this claim.

4   (*See* Sept. 25, 2008 Order at 15.)

5   Accordingly, for all the reasons set forth above, Defendants' Motions to Dismiss

6   Plaintiff's Fourth Amendment claims are **GRANTED** pursuant to FED.R.CIV.P. 12(b)(6) without

7   leave to amend.

8   **F.      First Amendment Claims - Count "4"**

9   Defendants Harmon, Duarte, Stratton, Mejia and Sandoval move to dismiss Plaintiff's

10   First Amendment claims against them on the grounds that there are no facts alleged to support

11   a claim against them.  Plaintiff claims his First Amendment rights have been violated because

12   he has been denied the "right to petition the government for a redress of grievances" and "acts

13   of retaliation and acts of intimidation."  (FAC at 17.)

14   **1.      Right to Petition the Government/Access to Courts Claim**

15   Inmates "have a constitutional right to petition the government for redress of their

16   grievances, which includes a reasonable right of access to the courts." *O'Keefe v. Van Boening*,

17   82 F.3d 322, 325 (9th Cir. 1996); *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  In order

18   to establish a violation of the right of access to the courts, however, an inmate must allege facts

19   sufficient to show that: (1) a nonfrivolous legal attack on his conviction, sentence, or conditions

20   of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a

21   result.  *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996).  An "actual injury" is defined as "actual

22   prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing

23   deadline or to present a claim."  *Id.* at 348.

24   Plaintiff has not stated a claim for denial of access to the courts because he has not

25   alleged any facts sufficient to show that he has been precluded from pursuing a non-frivolous

26   direct or collateral attack upon either his criminal conviction or sentence or the conditions of his

27   current confinement.  *See Lewis*, 518 U.S. at 355 (right to access to the courts protects only an

28   inmate's need and ability to "attack [his] sentence[], directly or collaterally, and . . . to challenge

1   the conditions of [his] confinement."); *see also Christopher v. Harbury*, 536 U.S. 403, 415

2   (2002) (the non-frivolous nature of the "underlying cause of action, whether anticipated or lost,

3   is an element that must be described in the complaint.")

4        There are no allegations whatsoever that interference with his administrative grievances,

5   alleged interference with his legal mail or the loss of his legal documents caused any injury at

6   all, much less the type of "actual injury" required to state a claim under *Lewis*.   Thus,

7   Defendants' Motion to Dismiss Plaintiff's Access to Court's claim is **GRANTED** without leave

8   to amend.

9            **2.**       **Retaliation claim**

10       Defendants Harmon, Duarte, Stratton,[2] Mejia and Sandoval also seek dismissal of

11   Plaintiff's retaliation claim.  A plaintiff suing prison officials pursuant to § 1983 for retaliation

12   must allege sufficient facts to show:   (1) he was retaliated against for exercising his

13   constitutional rights, (2) the alleged retaliatory action "does not advance legitimate penological

14   goals, such as preserving institutional order and discipline," *Barnett v. Centoni*, 31 F.3d 813,

15   815-16 (9th Cir. 1994) (per curiam), and (3) the defendants' actions harmed him.  *See Resnick

16   v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997);

17   *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

18        Courts must "'afford appropriate deference and flexibility' to prison officials in the

19   evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."

20   *Pratt,* 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  Thus, the burden

21   is on the prisoner to allege facts which demonstrate "that there were no legitimate correctional

22   purposes motivating the actions he complains of."  *Id.* at 808.

23        Plaintiff's First Amended Complaint is devoid of any facts from which the Court could

24   find that Defendants Harmon, Duarte, Stratton, Mejia or Sandoval retaliated against him.

25   Plaintiff has not alleged any facts to show that the actions of the Defendants were in response

26   to Plaintiff exercising his constitutional rights.  Plaintiff's Oppositions refer to the Defendants

27

28          [2] Defendant Stratton is not named as a Defendant in Plaintiff's First Amendment claim, Count "4."  (*See* FAC at 17.)

1    "ominous appearance" but their mere presence is not enough to state a retaliation claim.  (*See*

2    Pl.'s Jan. 23, 2009 Opp'n at 16.)  Plaintiff's only reference to Defendant Mejia is that he arrived

3    at Plaintiff's hospital bed and "as a mere formality videotaped Plaintiff."  (FAC at ¶ 57.)  It is

4    unclear how the videotaping of Plaintiff's injuries would be used to retaliate against Plaintiff.

5    In addition, Plaintiff has not alleged any facts to show that the Defendants actions lacked or

6    failed to advance "legitimate penological goals such as preserving institutional order and

7    discipline."  *Barnett*, 31 F.3d at 815-16;  *Pratt*, 65 F.3d at 808; *Bruce*, 351 F.3d at 1289.   For

8    all these reasons, Defendants' Harmon, Duarte, Stratton, Mejia and Sandoval's  Motions to

9    Dismiss Plaintiff's retaliation claims are **GRANTED** for failure to state a claim upon which

10   relief can be granted pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend.

11        **G.     Conspiracy Claims pursuant to 42 U.S.C. §§ 1985(3) and 1986 - Count "5"**

12        Defendants seek dismissal of Plaintiff's conspiracy claims that he has brought pursuant

13   to 42 U.S.C. §§ 1985(3) and 1986.  "To state a cause of action under § 1985(3), a complaint

14   must allege (1) a conspiracy, (2) to deprive any person or a class of persons the equal protection

15   of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the

16   conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a

17   deprivation of any right or privilege of a citizen of the United States."  *Gillespie v. Civiletti*, 629

18   F.2d 637, 641 (9th Cir. 1980); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971);

19   *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).   "[T]he language requiring

20   intent to deprive *equal* protection . . . means that there must be some racial, or perhaps otherwise

21   class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin*, 403

22   U.S. at 102; *see also Sever*, 978 F.2d at 1536.

23        Here, Plaintiff fails to allege membership in  a protected class and fails to allege that any

24   Defendant acted with class-based animus, both of which are essential elements of a cause of

25   action under 42 U.S.C. § 1985(3).  *See Griffin*, 403 U.S. at 101-02; *Schultz v. Sundberg*, 759

26   F.2d 714, 718 (9th Cir. 1985) (holding that conspiracy plaintiff must show membership in a

27   judicially-designated suspect or quasi-suspect class); *Portman v. County of Santa Clara*, 995

28   F.2d 898, 909 (9th Cir. 1993).  Accordingly, the Court **GRANTS** Defendants' Motions to

1    Dismiss Plaintiff's conspiracy claims brought pursuant to 42 U.S.C. § 1985(3) for failing to state

2    a claim pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend.

3         Moreover, to the extent that Plaintiff seeks to bring a § 1986 conspiracy claim, he cannot

4    do so.  "Section 1986 authorizes a remedy against state actors who have negligently failed to

5    prevent a conspiracy that would be actionable under § 1985." *Cerrato v. S.F. Cmty. Coll. Dist.,*

6    26 F.3d 968, 971 n.7 (9th Cir. 1994).  "A claim can be stated under [§] 1986 only if the

7    complaint contains a valid claim under [§] 1985." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d

8    621, 626 (9th Cir. 1988).  Because Plaintiff is unable to state a conspiracy claim pursuant to 42

9    U.S.C. § 1985(3), he cannot state a claim pursuant to 42 U.S.C. § 1986.  Thus, Defendants'

10   Motions to Dismiss Plaintiff's conspiracy claims brought pursuant to 42 U.S.C. § 1986 are

11   **GRANTED** pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend.

12            **H.    Defendant Pegues' Notice of Joinder in Motions to Dismiss**

13        Defendant Pegues seeks dismissal of all claims against him and joins Defendants'

14   Motions to Dismiss Plaintiff's First Amended Complaint.  In Plaintiff's First Amended

15   Complaint, he alleges, following the incident on June 10, 2005, Defendant Pegues was informed

16   by a prison physician that Plaintiff needed to be "immediately transferred" to a hospital for

17   further treatment.  (*See* FAC ¶ 60.)  Plaintiff further alleges that Defendant Pegues "refused to

18   act or expedite Plaintiff's transfer to [the hospital]" which allowed Plaintiff's "suffering

19   condition to deteriorate."  (*Id.* ¶ 61.)

20        Defendant Pegues' Joinder fails to address these claims that are sufficient to state an

21   Eighth Amendment deliberate indifference to serious medical need claim.  Accordingly, those

22   claims remain against Defendant Pegues.

23        Defendant Pegues does argue that he cannot be held liable for failing to file a report on

24   Plaintiff's injuries.  (*See* Joinder at 3.)  The Ninth Circuit has held that an inadequate

25   investigation alone does not "involve[] the deprivation of a protected right," but must involve

26   "another recognized constitutional right." *See Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985).

27   Here, while Plaintiff has stated an Eighth Amendment claim for other actions he alleges on the

28   part of Pegues, there is no constitutional violation alleged resulting from this failure to file a

1    report.  Accordingly, Defendant Pegues' Motion to Dismiss Plaintiff's Fourteenth Amendment

2    claims pursuant to FED.R.CIV.P. 12(b)(6) is **GRANTED** without leave to amend.

3                                                    **III.**

4              DISMISSAL OF REMAINING UNSERVED DEFENDANTS PER FED.R.CIV.P. 4(m)

5              Two Defendants have remained unserved in this action, Defendants Torres and Bailey.

6    The Court has previously ordered the Attorney General's Office to obtain the last known contact

7    information for Torres and Bailey from the California Department of Corrections and

8    Rehabilitation ("CDCR") and provide this information to the U.S. Marshal in a confidential

9    memorandum.  (*See* Jan. 26, 2009 Order at 3-4.)  However, Plaintiff's attempts to serve either

10   Defendant via the U.S. Marshal was unsuccessful.   Thus, Plaintiff filed another Motion

11   requesting "the Court's assistance in initiating other appropriate mechanism[s] for locating and

12   effecting service upon Torres and Bailey."  (Pl.'s Mot. for Order to Locate at 4, Doc. No. 98.)

13   The Court found that Deputy Attorney General Snyder fully complied with the Court's Order

14   but the U.S. Marshal was unable to serve either Defendant with the last known address provided

15   by the CDCR.  (*See* April 30, 2009 Order at 1-2.)  The Court denied Plaintiff's Motion and

16   informed Plaintiff that while "an incarcerated pro se litigant proceeding *in forma pauperis* is

17   entitled to rely on the service of the summons and complaint by the U.S. Marshal, the U.S.

18   Marshal can attempt service only after it has been provided with the necessary information to

19   effectuate service."  (*Id.* at 2; citing *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990).

20             Plaintiff was granted one last extension of time to effect service on Defendants Torres and

21   Bailey.  Plaintiff was to effect service on these Defendants by June 12, 2009.  (*See* Apr. 30, 2009

22   Order at 3.)   That time has passed and Plaintiff has failed to serve these Defendants.

23   Accordingly, Federal Rule of Civil Procedure 4(m) requires their dismissal.  *See* FED.R.CIV.P.

24   4(m) (defendants must be served within 120 days after the filing of the complaint.); *Murphy*

25   *Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes

26   a party officially, and is required to take action in that capacity, only upon service of summons

27   or other authority-asserting measure stating the time within which the party served must appear

28   to defend.").  "In the absence of service of process (or waiver of service by the defendant),"

under FED.R.CIV.P. 4, "a court ordinarily may not exercise power over a party the complaint names as a defendant." *Id.*

For these reasons, the Court hereby DISMISSES Defendants Torres and Bailey from this action pursuant to FED.R.CIV.P. 4(m).

## IV.

### CONCLUSION AND ORDER

Based on the foregoing, the Court hereby:

(1)  **GRANTS** Defendant Ritter's Motion to Dismiss the Eighth Amendment claims against him pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend;

(2)  **GRANTS** Defendants Harmon and Duarte's Motion to Dismiss the Eighth Amendment claims against them pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend;

(3)  **GRANTS** Defendants' Motions to Dismiss Plaintiff's Fourteenth Amendment Due Process and Equal Protection claims and dismisses these claims as to all Defendants pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend;

(4)  **GRANTS** Defendants' Motions to Dismiss Plaintiff's Fourth Amendment claims and dismisses these claims as to all Defendants pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend;

(5)  **GRANTS** Defendants' Motions to Dismiss Plaintiff's Access to Courts claims and dismisses these claims as to all Defendants pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend;

(6)  **GRANTS** Defendants Megia, Sandoval, Harmon, Stratton and Duarte's Motion to Dismiss Plaintiff's First Amendment retaliation claims pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend;

(7)  **GRANTS** Defendants' Motion to Dismiss Plaintiff's conspiracy claims and dismisses these claims as to all Defendants pursuant to FED.R.CIV.P. 12(b)(6) without leave to amend;

(8)  **DENIES** Defendant Pegues' Motion to Dismiss Plaintiff's Eighth Amendment

1   claims pursuant to FED.R.CIV.P. 12(b)(6);

2   (9)   **DISMISSES** Defendants Torres and Bailey without prejudice pursuant to

3   FED.R.CIV.P. 4(m); and

4   (10)   **ORDERS** Defendants Ryan, Ochoa, Pegues, Jimenez, Zills, Schommer, Ortiz,

5   Rodiles, Mejia, Sandoval, Wells, Castaneda, Cosio, Bell, Andalon, Stratton,

6   Flores, Ritter, Price, Martinez, Valenzuela and Rangel to file their Answer to the

7   claims remaining in Plaintiff's First Amended Complaint within ten (10) days of

8   the date this Order is  "Filed" pursuant to FED.R.CIV.P. 12(a)(4)(A).

9   **IT IS SO ORDERED.**

10

11

12   DATED:  June 26, 2009

13   _____

14   HON. NAPOLEON A. JONES, JR.
    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28