

1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

11
12

RODNEY WAYNE JONES,
CDCR #D-55894,

Civil No.    07cv1019 JMA (NLS)

13

Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56**

14

vs.

15

STUART J. RYAN, et al.,

16
17

Defendants.

**[Doc. Nos. 130, 131]**

18
19

**I.**

20

**STATEMENT OF THE CASE**

21

Rodney Wayne Jones, ("Plaintiff"), a state prisoner currently housed at the California

22

State Prison located in Represa, California, is proceeding pro se and *in forma pauperis* with a

23

First Amended Complaint filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983.  Currently

24

pending before the Court is Defendants Ryan, Valenzuela, Ochoa, Ortiz, Ritter, Flores, Jimenez,

25

Cosio, Castaneda, Schommer, Martinez, Rangel, Bell, Mejia, Rodiles, Sandoval, Wells, Zills,

26

Andalon, Stratton and Price's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc.

27

No. 130].  Defendant Pegues has filed a Notice of Joinder to Defendants' Motion [Doc. No.

28

131].

1

2

**II.**

**PROCEDURAL BACKGROUND**

3       Defendants are moving for partial summary judgment on Plaintiff's First, Eighth and

4   Fourteenth Amendment claims.  On April 12, 2010, the Court advised Plaintiff of his rights and

5   obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th

6   Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).[1]  Plaintiff filed his

7   Opposition, along with an Amended Opposition to Defendants' Motion [Doc. Nos. 144, 160].

8   Plaintiff was also permitted to file a "Supplemental Declaration" [Doc. No. 172].[2]  All the

9   Defendants who have moved for summary judgment, other than Defendant Pegeus, have filed

10   a Reply to Plaintiff's Opposition [Doc. Nos. 166, 173].

11       Having now exercised its discretion to consider the matter as submitted on the papers

12   without oral argument pursuant to S.D. CAL. CIVLR 7.1.d.1, the Court hereby **GRANTS** in part

13   and **DENIES** in part Defendants' Partial Motion for Summary Judgment pursuant to

14   FED.R.CIV.P. 56 for the reasons set forth in detail below.

15   / / /

16

17

18

19

20

---

21       [1] *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro

22   se prisoner] with fair notice of the requirements of the summary judgment rule.'"  *Klingele*, 849 F.2d
at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)).  "It would not be realistic to

23   impute to a prison inmate ... an instinctual awareness that the purpose of a motion for summary
judgment is to head off a full-scale trial by conducting a trial in miniature, on affidavits, so that not

24   submitting counter affidavits is the equivalent of not presenting any evidence at trial."  *Jacobsen v.
Filler*, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (internal quotation omitted).  Actual knowledge or any

25   level of legal sophistication does not obviate the need for judicial explanation.  *Klingele*, 849 F.2d at
411-12.  Thus, the district court is required to "tell the prisoner about his 'right to file counter-affidavits

26   or other responsive materials and [to][ alert[] [him] to the fact that his failure to so respond might result
in the entry of summary judgment against him.'"  *Jacobsen*, 790 F.2d at 1365 n.8 (quoting *Klingele*, 849

27   F.2d at 411).

28       [2] In order to lessen any confusion Court will refer solely to Plaintiff's Amended Opposition as
it is virtually identical to Plaintiff's initial Opposition.

# III.

## PLAINTIFF'S FACTUAL ALLEGATIONS[3]

In 2005 Plaintiff was housed at Centinela State Prison which is located in Imperial County.  (*See* FAC at 1.)  On June 10, 2005, Plaintiff was awakened by his cell door being pushed open and saw Defendants Schommer and Ortiz standing in front of his cell.  (*Id.* at ¶¶ 1-2.)  Defendant Schommer told Plaintiff it was "count time" and Plaintiff informed Defendant Schommer that he had fallen asleep because he was taking pain medication.  (*Id.* at ¶¶ 3-4.)  Defendants Schommer and Ortiz walked away from Plaintiff's cell as Defendants Torres and Mejia approached.  (*Id.* at ¶¶ 6-7.)  Defendant Wells closed Plaintiff's cell door from the control tower.  (*Id.* at ¶ 8).  Defendants Schommer, Ortiz and Torres told Defendant Wells to reopen Plaintiff's cell.  (*Id.* at ¶ 12.)  Defendants Schommer and Torres entered Plaintiff's cell and began to simultaneously use oleresin capsicum (also known as "pepper spray") on Plaintiff, who was not resisting.  (*Id.* at ¶¶ 14-18.)

While Plaintiff was shielding his face, he was struck on the lower left leg with a baton by either Defendant Torres or Schommer and then struck on the right temple by Defendant Torres.  (*Id.* at ¶¶ 20-21.)  Defendant Castaneda then entered Plaintiff's cell and placed Plaintiff in handcuffs.  (*Id.* at ¶ 22.)  Defendant Castaneda then took Plaintiff to the shower in order to "decontaminate" Plaintiff from the pepper spray, but instead of using cold water, which is required by regulations, Defendant Castaneda used hot water which caused Plaintiff's skin to burn.  (*Id.* at ¶¶ 23- 25.)  Defendant Zills entered the shower area and began pushing Plaintiff to the exit of the housing unit by his handcuffs.  (*Id.* at ¶¶ 27-28.)  While exiting through the corridor area, Defendant Zills "ran Plaintiff face first into the corridor's brick wall."  (*Id.* at ¶ 29.)  Plaintiff was then "slammed to the ground" by Defendants Zills and Torres.  (*Id.* at ¶ 31.)  As Defendant Zills held Plaintiff, "Defendants Torres, Ortiz and Rodiles proceeded to take turns striking Plaintiff in the head and body utilizing their state-issued side handle batons."  (*Id.* at ¶

---

[3]  These factual allegations are taken from Plaintiff's First Amended Complaint and were set forth in the Court's previous Order granting in part and denying in part Defendants' Motion to Dismiss. To the extent that Defendants dispute Plaintiff's allegations or add additional factual allegations, those will be set forth below in the Court's analysis on the merits of the claims.

32.)  As Defendant Zills continued to hold Plaintiff, Defendant Mejia "walked over and kicked Plaintiff." (*Id.* at ¶ 35.)  In addition, Defendant Sandoval began "viciously [kicking] Plaintiff" in his chest "with enough force that [caused] Plaintiff to temporarily stop breathing." (*Id.* at ¶ 37.)  Defendant Castaneda began to yell in Spanish "that's it." (*Id.* at ¶ 39.)  Plaintiff claims that Defendants Castaneda, Jimenez, Bailey, Cosio, Bell and Andalon "observed Plaintiff being maliciously and wantonly beaten" but failed to intervene. (*Id.* at ¶ 40.)

Defendants placed Plaintiff in the shower to remove any signs of blood and then Defendants Torres, Jimenez and Bell proceeded to take Plaintiff to the medical clinic. (*Id.* at ¶ 42-44.)  Plaintiff claims that Defendants Jimenez and Torres "intentionally [delayed] Plaintiff from receiving medical evaluation and treatment" by keeping Plaintiff in a holding cell for two hours inside the medical clinic. (*Id.* at ¶¶ 46-47.)  Plaintiff was later examined by medical staff and it was determined that he should be seen by the prison's physician. (*Id.* at ¶ 50.)  Plaintiff claims that while he was waiting to be seen by the prison's physician, Defendants Harmon and Duarte made "obscene/vulgar statements directed at Plaintiff." (*Id.* at ¶¶ 53-54.)  Plaintiff was examined by "Doctor Naz," the prison's physician, who "sutured Plaintiff's three scalp lacerations and one left leg laceration and evaluated plaintiff as having a possible liver rupture and chest wall contusion." (*Id.* at ¶ 56.)  Defendants Stratton and Mejia videotaped Plaintiff's injuries. (*Id.* at ¶ 57.)  Defendants Ryan, Ochoa and Pegues arrived soon after and asked Plaintiff's questions regarding the incidents that led to his injuries. (*Id.* at ¶ 58.)

Doctor Naz recommended that Plaintiff be immediately transferred to Pioneer Memorial Hospital ("PMH") due to his potentially "life-threatening injuries." (*Id.* at ¶ 60.)  Defendants Ryan, Ochoa, Pegues and Stratton "refused to act or expedite Plaintiff's transfer to PMH and instead intentionally allowed Plaintiff's suffering condition to deteriorate." (*Id.* at ¶ 61.)  At approximately 4:34 a.m. on June 11, 2005, Plaintiff was transferred to the PMH emergency room. (*Id.* at ¶ 63.)  Plaintiff underwent medical examinations and testing where it was determined that he suffered from a "punctured and collapsed right lung, a minimum of four broken right ribs, three severe scalp lacerations, one left leg laceration, and multiple abrasions, bruising and swelling throughout Plaintiff's body." (*Id.* at ¶ 65.)  Plaintiff claims Defendants

1  Jimenez, Torres, Schommer, Ortiz, Zills, Rodiles, Wells, Flores and Ritter submitted "fabricated

2  disciplinary reports against Plaintiff" to "conceal" their own misconduct.  (*Id.* at ¶¶ 68-70.)

3  Defendant Flores submitted a report indicating that he had discovered an inmate manufactured

4  weapon in Plaintiff 's cell which Plaintiff claims is a false accusation.  (*Id.* at ¶ 71.)

5      Plaintiff was charged with disciplinary violations including assault on staff, battery on

6  staff, battery on a Peace Officer with a weapon and attempted murder of a Peace Officer.  (*Id.*

7  at ¶ 73.)  Plaintiff also claims that his property was taken by Defendants in retaliation for

8  Plaintiff's allegations against Defendants.  (*Id.* at ¶¶ 93-95.)  To date, Plaintiff has yet to receive

9  a disciplinary hearing on the rules violation report that was issued to him charging Plaintiff with

10  attempted murder of a Peace Officer.  (*Id.* at ¶ 100.)

11  **IV.**

12  **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

13  **A.**    **Standard of Review**

14      Summary judgment is properly granted when "there is no genuine issue as to any material

15  fact and ... the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).

16  Entry of summary judgment is appropriate "against a party who fails to make a showing

17  sufficient to establish the existence of an element essential to that party's case, and on which that

18  party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

19  The court shall consider all admissible affidavits and supplemental documents submitted on a

20  motion for summary judgment.  *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018,

21  1020 (9th Cir. 1986).

22      The moving party has the initial burden of demonstrating that summary judgment is

23  proper.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970).  However, to avoid summary

24  judgment, the nonmovant cannot rest solely on conclusory allegations.  *Berg v. Kincheloe*, 794

25  F.2d 457, 459 (9th Cir. 1986).  Rather, he must present "specific facts showing there is a genuine

26  issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The Court may not

27  weigh evidence or make credibility determinations on a motion for summary judgment.  Quite

28  the opposite, the inferences to be drawn from the underlying facts must be viewed in the light

most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in determining whether the nonmovant has met his burden, the Court must consider the evidentiary burden imposed upon him by the applicable substantive law. *Id.*

A verified complaint or motion may be used as an opposing affidavit under FED.R.CIV.P. 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam) (complaint); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion). To "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

## B.     42 U.S.C. § 1983

Section 1983 authorizes a "suit in equity, or other proper proceeding for redress" against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Nelson v. Campbell*, 541 U.S. 637, 124 S.Ct. 2117, 2122 (2004).

## C.     Evidentiary Objections

Defendants have filed evidentiary objections to three documents attached to Plaintiff's Amended Opposition. *See* Defs.' Reply at 2. However, at the summary judgment stage, the Court need not focus on whether the form of the evidence is admissible. Instead, the court must focus on the admissibility of its contents and ask whether the evidence "could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."); *Fed. Deposit Ins. Corp. v. N.H. Ins.* Co., 953 F.2d 478, 485 (9th Cir. 1991) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.") (internal quotation marks and citation omitted)).

Plaintiff's Exhibit "K" appears to a summary of the criminal charges brought against Plaintiff relating to the incidents that form the basis of this action, but it is unclear where the document came from or its intended purpose.  Thus, the Court sustains Defendants' objections to this document.  Exhibit "L" appears to be a news article and Appendix "A" appears to be a memorandum from the California Department of Corrections and Rehabilitation ("CDCR").  It will not be necessary for the Court to consider these documents with respect to Defendants' Motion for Summary Judgment.   Accordingly, the Court overrules Defendants' objections to Exhibit "L" and Appendix "A" without prejudice to re-asserting these objections at trial should Plaintiff move to introduce these exhibits into evidence.

### D.        Eighth Amendment Failure to Protect Claims

Defendants Wells, Castaneda, Jimenez, Cosio, Bell and Andalon seek summary judgment on Plaintiff's claims that they violated his Eighth Amendment rights by failing to protect him from a serious risk of harm.  (*See* Defs.' P&As in Supp. of Summ. J. at 11-12.)  Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates."  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").  In fact, the Supreme Court has specifically held that this duty requires prison officials to protect prisoners from violence at the hands of other prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted).  "Protecting the safety of prisoners and staff involves difficult choices and evades easy solutions."  *Berg v. Kincheloe*, 794 F.2d at 460.

Thus, to show that a prisoner has been subject to cruel and unusual punishment by an officer's failure to protect him, he must point to evidence in the record which shows that the alleged deprivation was objectively "sufficiently serious," *i.e.*, that the conditions he faced posed a "substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind."  *Wilson*, 501 U.S.

1   at 297 (internal quotation marks, emphasis and citations omitted); *see also Hudson*, 503 U.S. at

2   5, 8.

3       In a failure to protect case, "that state of mind is one of 'deliberate indifference' to inmate

4   health or safety." *Farmer*, 511 U.S. at 834.  Prison officials display a deliberate indifference to

5   an inmate's well-being when they know of and consciously disregard an excessive risk of harm

6   to that inmate's health or safety.  *Farmer*, 511 U.S. at 837.  "[T]he official must both be aware

7   of facts from which the inference could be drawn that a substantial risk of serious harm exists,

8   and he must also draw the inference."  *Id.*  Thus, "deliberate indifference" entails something

9   more than mere negligence, but may be satisfied with proof of something less than acts or

10   omissions "for the very purpose of causing harm," or that a particular official "acted or failed

11   to act believing that harm actually would befall an inmate; it is enough that the official acted or

12   failed to act despite his knowledge of a substantial risk of serious harm."  *Farmer*, 511 U.S. at

13   842.  "Whether a prison official had the requisite knowledge of a substantial risk" may be

14   inferred if the prisoner produces evidence sufficient to show that the risk was "obvious."  *Id.*

15             a.   *Claims against Defendant Wells*

16       Plaintiff alleges Defendant Wells, who was the officer in the control tower responsible

17   for opening and closing cell doors, "appeared to have prior knowledge of the forthcoming

18   attack" by Defendants Torres and Schommer and Ortiz because he opened the door to Plaintiff's

19   cell to allow them to enter.  (FAC at 6; Pl.'s Amd. Opp'n, Ex. "M" Transcript of Grand Jury

20   Proceedings at 76:1-4.)  Defendant Wells argues that there is no evidence of any "discussion

21   regarding a plot to use excessive force against Plaintiff."  (Defs.' P&A's in Supp. of Summ. J.

22   at 11.)  Plaintiff responds by asserting that there was a discussion among Defendants Torres,

23   Schommer, Ortiz, Mejia and Wells prior to Wells opening Plaintiff's cell door.  (*See* Pl.'s Amd.

24   Opp'n at 4.)  However, while Plaintiff testified that the conversation which formed the "plan of

25   attack" against him took place outside of the control tower, he also testified that Wells was in

26   the control tower during the entire incident.  (*See* Defs.' Ex. 1, Pl.'s Depo. at 49:22-25;  49:11-

27   15.)

28   / / /

8

1    Plaintiff's only evidence to support his claim that Defendant Wells knew of the attack is

2    his allegation that Defendant Torres asked Defendant Schommer "are you ready" immediately

3    prior to entering Plaintiff's cell, which he claims is indicative of a "preplanned attack" on

4    Plaintiff." (*See* Pl.'s Amd. Opp'n at 4.)  However, "sweeping conclusory allegations will not

5    suffice to prevent summary judgment" on Plaintiff's Eighth Amendment claims against

6    Defendant Wells.  *Leer v. Murphy*, 844 F.2d 628, 634 (1988) (citing *Berg*, 794 F.2d at 460.)

7    Even if

8    These allegations are mere speculation by Plaintiff as to what was said or heard by

9    Defendant Wells, whom Plaintiff acknowledges was in the control tower during the entire

10   incident.  Thus, Plaintiff has pointed to no evidence in the record to show that Defendant Wells

11   had any actual knowledge of a "substantial risk of serious harm" to Plaintiff in his prison cell.

12   *Farmer*, 511 U.S. at 842.  Based on the lack of a triable issue of material fact, the Court

13   **GRANTS** Defendant Wells' Motion for Summary Judgment as to Plaintiff's Eighth Amendment

14   failure to protect claims.

15                    2.    *Claims against Castaneda*

16   Defendant Castaneda moves to dismiss Plaintiff's Eighth Amendment failure to protect

17   claims alleged against him.  Plaintiff alleges that Defendant Castaneda was present during the

18   time excessive force was being used against him, but failed to take action to stop the use of

19   force. (*See* FAC at 7-8.) Specifically, Plaintiff claims "only after Plaintiff was repeatedly struck

20   with batons and kicked at least twice" did Defendant Castaneda yell in Spanish "that's it!" (*Id.*

21   at 8.)

22   In their moving papers, Defendants claim "Castaneda . . . never witnessed any force being

23   used against Plaintiff on June 10, 2005." (Defs.' P&A's in Supp. of Summ. J. at 11; *see also*,

24   Defs.' Sep. Stmt. Undis. Fact No. 24.)   In support of this statement, Defendants submit the

25   Declaration of F. Castaneda.  (*Id.*)   Defendant Castaneda does not claim he was not present

26   during any of the incidents alleged to have occurred by Plaintiff, but rather only that he did not

27   actually observe any of the alleged force being used.  Defendant Castaneda's declaration simply

28   states, "I did not witness any force being used against inmate Jones on June 10, 2005;" he

9

07cv1019 JMA

provides no other explanation and does not deny he was present when the alleged force took place.  (Decl. of F. Castaneda at ¶ 4.)  Plaintiff states, in his verified First Amended Complaint, that Defendant Castenada was present and failed to protect him from a serious risk of harm. (*See* FAC at 8.)   Plaintiff testified, with specificity, in his deposition that Defendant Castaneda was present during the incident outside of Plaintiff's housing unit and further alleges that Castaneda spoke to the other officers in Spanish to stop the use of force.  (*Id.*)  Here, Plaintiff has alleged that Castenada failed to stop the force before it was used, while Castaneda denies ever seeing force used on Plaintiff. Unlike the claims against Defendant Wells, these claims and the arguments raised are not speculative, but instead raise issues of credibility that cannot be decided at the summary judgment stage.  These types of credibility determinations are the sole province of a jury.  *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005) (in ruling on a motion for summary judgment, the court may not weigh evidence or judge the credibility of witnesses).

Thus, Defendant Castenada's Motion for Summary Judgment of the Eighth Amendment failure to protect claims brought against him is **DENIED**.

### 3. Claims against Defendants Jimenez, Cosio, Bell and Andalon

Defendants Jimenez, Cosio, Bell and Andalon raise similar arguments as those raised by Castenada in their motion for summary judgment as to Plaintiff's Eighth Amendment failure to protect claims.  These Defendants also claim they did not witness the use of force against Plaintiff. (Defs.' P&A's in Supp. of Summ. J. at 12; *see also*, Defs.' Sep. Stmt. Undis. Fact No. 26.).

In his First Amended Complaint, Plaintiff alleges that these Defendants were present when he was allegedly beaten after he had been taken to the showers and escorted out of the housing unit. (*See* FAC at 8; *see also* Pl.'s Depo at 96:8-16.)  The evidence Defendants provide in support of their argument that they did not witness any force being used against Plaintiff  is found in their responses to Plaintiff's Request for Admissions. (Defs.' Sep. Stmt. Undis. Fact No. 26.)  Defendants Cosio and Andalon deny seeing Plaintiff at any time that day.  (*Id.*) However, Defendants Jimenez and Bell admit that they observed Plaintiff being escorted out of

10

1   his housing unit, which is the time frame during which the second incident of force is alleged

2   to have occurred.  (*See* Defs.' Ex. 2, Jimenez's Response to Pl.'s Req. for Admissions No. 4; *see*

3   *also* Defs.' Ex. 4, Bell's Response to Pl's Req. for Admissions No. 4.)

4          Plaintiff maintains that the "handwritten incident reports" document that force was used

5   "upon Plaintiff immediately after Plaintiff was escorted out of the Housing Unit."  (Pl.'s Amd.

6   Opp'n at 6.)   Thus, according to Plaintiff, it stands to reason that if Jimenez and Bell saw

7   Plaintiff being escorted out of the housing unit, they would have also seen the force that was

8   used on Plaintiff at this time and failed to prevent the force from being used.  (*Id.*)  Defendants

9   do not dispute that the reports do appear to indicate that force was used against Plaintiff as he

10  was escorted out of the housing unit.  Thus, the record before the Court indicates that there is

11  a triable issue of material fact with regard to whether Defendants Jimenez and Bell observed

12  force being used on Plaintiff and whether they were deliberately indifferent to a "substantial risk

13  of serious harm" to Plaintiff.  *Farmer*, 511 U.S. at 842.

14         However, with respect to Defendants Cosio and Andalon, these Defendants stated under

15  oath that they did not observe Plaintiff at any time on the night of June 10, 2005.  (*See* Defs.' Ex.

16  3, Cosio's Resp. to Req. for Admissions, No. 12; *see also* Defs.' Ex. No. 5, Andalon's Resp. to

17  Request for Admissions, No. 12.)   Plaintiff does not provide any evidence or point to any

18  evidence in the record indicating that either of these Defendants was present at any time during

19  any of the alleged incidents.

20         Accordingly, the Court **GRANTS** Defendants Cosio and Andalon's Motion for Summary

21  Judgment and **DENIES** Defendants Jimenez and Bell's Motion for Summary Judgment as to

22  Plaintiff's Eight Amendment failure to protect claims.

23         **E.     Eighth Amendment excessive force claims**

24         Defendant Castaneda moves to dismiss Plaintiff's Eighth Amendment excessive force

25  claims against him.   The "core judicial inquiry," when a prisoner alleges the excessive use of

26  force under the Eighth Amendment, is "not whether a certain quantum of injury was sustained,

27  but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or

28  maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. at 1, 7 (1992); *see*

07cv1019 JMA

1   *also Whitley v. Albers*, 475 U.S. 312, 319-321, (1986).  "When prison officials maliciously and

2   sadistically use force to cause harm," the Supreme Court has recognized, "contemporary

3   standards of decency always are violated ... whether or not significant injury is evident.

4   Otherwise, the Eighth Amendment would permit any physical punishment, no matter how

5   diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S.

6   at 9.  Thus, "[i]n determining whether the use of force was wanton and unnecessary," the court

7   must  "evaluate the need for application of force, the relationship between that need and the

8   amount of force used, the threat reasonably perceived by the responsible officials, and any

9   efforts made to temper the severity of a forceful response."  *Id.* at  7 (internal quotation marks

10  and citations omitted).

11      Here, Plaintiff's claims of excessive force against Castaneda arise from his allegation that

12  Castaneda purposefully used hot water instead of cold water when he was decontaminating

13  Plaintiff after being exposed to pepper spray.  (*See* FAC at 7.)  Defendant Castaneda responds

14  in his Declaration that he does "not believe" that he was the officer who "turned on the water

15  and placed inmate Jones underneath it." (Castaneda Decl. at ¶ 3.)  Here, even assuming that

16  Castaneda was the officer who placed Plaintiff in the shower and pushed the hot water button,

17  there is no evidence in the record that would support a claim that this was done with malicious

18  or sadistic intent.      *Hudson*, 503 U.S. at 7.  Plaintiff does refer to Defendant Castaneda's

19  "malicious actions" in his Opposition, but fails to refer to any evidence in the record that would

20  support a finding of malicious or sadistic intent.  (Pl.'s Amd. Opp'n at 6.)  Moreover, there is

21  no evidence in the record to find that Plaintiff suffered any injury, de minimus or otherwise, as

22  a result of the decontamination shower.  "Not every push or shove, even if it may later seem

23  unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."

24  *Hudson*, 503 U.S. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

25      Thus, the Court finds there is no triable issue of material fact as to whether Defendant

26  Castaneda used excessive force against Plaintiff in violation of his Eighth Amendment rights.

27  Defendant Castenada's Motion for Summary Judgment as to Plaintiff's Eighth Amendment

28  excessive force claims is **GRANTED**.

**F.      Plaintiff's Eighth Amendment Medical Care Claims**

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs.  *Estelle*, 429 U.S. at 105. "Medical" needs include a prisoner's  "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must point to evidence in the record from which a trier of fact might reasonably conclude that Defendants' medical treatment placed Plaintiff at risk of "objectively, sufficiently serious" harm and that Defendants  had a "sufficiently culpable state of mind" when they either provided or denied him medical care.  *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted).   Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation.  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002); *Toguchi*, 391 F.3d at 1057 ("To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'") (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*,  217 F.3d 726, 731 (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (quotations omitted); *Lopez*, 203 F.3d at 1131-32; *see also Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain). / / /

1    However, the subjective component requires the prisoner to also allege facts which show

2    that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial

3    risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v.*

4    *Brennan*, 511 U.S. 825, 835 (1994)).  As stated above, "deliberate indifference" is evidenced

5    only when "the official knows of and disregards an excessive risk to inmate health or safety; the

6    official must both be aware of the facts from which the inference could be drawn that a

7    substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S.

8    at 837; *Toguchi*, 391 F.3d at 1057.

9    Inadequate treatment due to "mere medical malpractice" or even gross negligence, does

10   not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Hallett*, 296 F.3d at 744; *Wood*

11   *v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  In other words, an "official's failure to

12   alleviate a significant risk that he should have perceived but did not, ... cannot ... be condemned

13   as the infliction of punishment." *Farmer*, 511 U.S. at 838; *Toguchi*, 391 F.3d at 1057 ("If a

14   prison official should have been aware of the risk, but was not, then the official has not violated

15   the Eighth Amendment, no matter how severe the risk.") (brackets, footnote and citations

16   omitted)).  The Eighth Amendment proscribes only "the 'unnecessary and wanton infliction of

17   pain,' [] includ[ing] those sanctions that are 'so totally without penological justification that it

18   results in the gratuitous infliction of suffering.'" *Hoptowit*, 682 F.2d at 1246 (quoting *Gregg*,

19   428 U.S. at 173, 183).

20   Moreover, a difference of opinion between medical professionals concerning the

21   appropriate course of inmate treatment or care is not enough, by itself, to support a claim of

22   deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Nor does a

23   difference of opinion between the prisoner and his doctors constitute deliberate indifference.

24   *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).  Deliberate indifference can be

25   manifested if a doctor or prison guard intentionally denies or delays access to medical care or

26   otherwise interferes with medical treatment already prescribed, *see Estelle*, 429 U.S. at 104-05.

27   / / /

28   / / /

1.   *Claims against Jimenez, Wells, Castaneda, Cosio and Bell*

Plaintiff claims in his First Amended Complaint that after he was subjected to excessive force, Defendants Jimenez and Bell escorted him to the "holding cage located inside the Facility "A" medical clinic." (FAC at 8.)  Plaintiff alleges that they failed to provide him with medical attention for two hours while he was "barely breathing and still bleeding profusely." (*Id.*)  In moving for summary judgment, Defendants maintain that Defendant Bell, a Medical Technical Assistant ("MTA"), examined Plaintiff and observed "some lacerations and abrasions" but no "internal injuries or need for Plaintiff to receive immediate medical attention." (Defs.' P&A's in Supp. of Summ. J. at 13; *see also* Bell Decl. at ¶ 3.)

It is undisputed that Plaintiff was placed in the holding cell for approximately two hours before he was brought to the prison's infirmary where he was eventually seen by a physician. Bell did examine Plaintiff in the holding cell and found that he had several lacerations and abrasions. (*See* Defs.' Ex. 7, Medical Report of Injury or Unusual Occurrence completed by D. Bell, MTA)  In his Declaration, Bell states that "after examining Inmate Jones, the MTA assigned to that medical clinic returned and I left Jones in that MTA's care and returned to my assigned post." (Bell Decl. at ¶ 5.)

The Court finds that there is a triable issue of material fact whether Bell should have known the need for Plaintiff to receive immediate medical attention.  Plaintiff states in his verified First Amended Complaint that he was "barely breathing" and "bleeding profusely" when he was brought to the holding cell and examined by Bell. (*See* FAC at 8.)  Bell maintains that he only saw "some lacerations and abrasions." (Bell Decl. at ¶ 3.)  While Bell declares that he was not aware of the need for Plaintiff to have "immediate medical attention," the record shows that Plaintiff ultimately received stitches for his lacerations and that there was a medical finding that he had a punctured lung and broken ribs. (*See* Pl.'s Amd. Opp'n, Ex. E, Medical records from Pioneers Hospital dated June 11, 2005.)  In *Farmer*, the Supreme Court stated that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.  Here, based on the record before the Court, there is a triable issue of material fact as to whether Defendant Bell was deliberately indifferent

to a serious risk to Plaintiff's health by allegedly causing him to be in a holding cell for two hours prior to being seen by a prison physician for treatment.  Accordingly, Defendant Bell's Motion for Summary Judgment as to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims is **DENIED**.

However, there is no evidence in the record to support an Eighth Amendment claim against Defendants Jimenez, Wells, Castaneda and Cosio.  Plaintiff alleges that Defendant Jimenez "locked Plaintiff inside a holding cage located inside the Facility "A" medical clinic." (FAC at 8.)  He further claims that Defendant Jimenez "intentionally delayed Plaintiff from receiving medical evaluation." (*Id.*)  Even if Defendant Jimenez initiated the order to initially house Plaintiff in the holding cell, Plaintiff was left with Defendant Bell, a prison official with medical training, in the holding tank of the medical facility to determine the extent of his injuries.  (*See* FAC at 8.)  Plaintiff provides no evidence to counter Defendant Jimenez's showing that he left Plaintiff in the care of Defendant Bell.  Plaintiff makes a similar argument as to Defendants Castaneda, Wells and Cosio, arguing that when they "signed-out on June 10, 2005 at approximately 2200 hours" they "left Plaintiff - for dead." (*See* Pl.'s Amd. Opp'n at 7.) There is no evidence that they had any more contact with Plaintiff after he was transported to be examined by Defendant Bell, nor does Plaintiff provide any evidence to overcome Defendant Jimenez, Wells, Castaneda and Cosio's showing that they had no involvement with the length of time Plaintiff was housed in the holding cell or any of the subsequent medical care he received after Jimenez left Plaintiff with the MTA.  Thus, there is no evidence in the record to show that Defendants Jimenez, Wells, Castaneda and Cosio were  deliberately indifferent to Plaintiff's serious medical needs.  Accordingly, Defendant Jimenez, Wells, Castaneda and Cosio's Motion for Summary Judgment as to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims is **GRANTED**.

### 2.   *Claims against Defendants Stratton, Ryan and Ochoa*

These Defendants move for summary judgment on the grounds that they "did not purposefully ignore or fail to respond to Plaintiff's pain or medical needs since there is no evidence they knew Plaintiff had a punctured lung, and Plaintiff was timely processed for

transport." (Defs.' P&A's in Supp. of Summ. J. at 14.) The only evidence these Defendants point to is the notation by Doctor Naz that Plaintiff may be transported to the hospital "via state vehicle" and Defendant Stratton's declaration that he processed the necessary paperwork to transfer Plaintiff "as quickly as possible." (*See* Defs.' Ex. 6, Physician's Orders; *see also* Stratton Decl. at ¶ 7.) There is nothing in the record, nor do Defendants provide any support for the argument, that the fact that the Doctor ordered Plaintiff to be transported via "state vehicle" as opposed to a different form of transportation lessened the need for Plaintiff to be transported to a hospital in a timely manner. In addition, Defendant Stratton sets forth his understanding of the policy as it relates to transporting an inmate to an outside hospital, but fails to actually identify the particular regulation that provides the framework for the policy.

The Court takes judicial notice of the CDCR's Operations Manual pursuant to Federal Rule of Evidence 201(c). In his Declaration, Defendant Stratton states that one of the reasons for the delay in transporting Plaintiff was the need to "pull" Plaintiff's "central file" that is "kept in a central locked area which is not staffed at night." (*See* Stratton Decl. at ¶¶ 5-6.) In reviewing the CDCR's Operations Manual, it appears that this procedure as outlined by Defendant Stratton is only mandatory when the request for removal occurs "during normal work hours." *See* CDCR Operations Manual § 62070.9.2. It is undisputed that the events that are the basis for this action occurred during the night, which is not typical "work hours."

When a request for temporary removal for medical reasons is made, CDCR form 7252 "Request for Authorization of Temporary Removal for Medical Treatment" is submitted by the medical staff. *See* CDCR Operations Manual § 62070.9.3. This form was completed by Dr. Naz and signed by Defendant Ryan. (*See* Defs.' Ex. 7, CDCR Form 7252 dated June 11, 2005.) In this document, it appears that Dr. Naz writes under "description of condition suggesting removal" that Plaintiff has severe [right upper quadrant] abdominal pain, tenderness [rule out] liver laceration/liver rupture, severe [shortness of breath]," and "possible pneumothorax." (*Id.*)

Defendants claim that there is "no evidence they knew Plaintiff had a punctured lung." (Defs.' P&A's in Supp. of Summ. J. at 14.) However, as stated above, Defendant Ryan signed the request for temporary removal that indicated Plaintiff had a "possible pneumothorax."

07cv1019 JMA

1   (Defs.' Ex. 7, CDCR Form 7252 dated June 11, 2005.)  The definition of a pneumothorax is a

2   "condition in which air or other gas is present in the pleural cavity" which occurs due to a

3   number of conditions including a "puncture of the chest wall or is induced as a therapeutic

4   measure to collapse the lung." Merriam Webster's Medical Dictionary, available at

5   http://medical.merriam -webster.com/ medical/ pneumothorax.

6          Dr. Naz lists a variety of concerns that would appear to dispute Defendants' contentions

7   that Plaintiff's medical condition did not qualify as an emergency.  Moreover, there is evidence

8   in the record to suggest that these Defendants were aware that Plaintiff may have suffered a

9   punctured or collapsed lung even if it was not definitively diagnosed until several hours later

10  after he was transported to the hospital.  Finally, the CDCR's Operations Manual appears to

11  dispute Defendant Stratton's declaration that all the steps he took in processing Plaintiff's

12  transfer to the hospital, which allegedly caused a four hour delay in Plaintiff receiving medical

13  attention at the hospital, were mandatory.  In fact the Operations Manual suggests that in

14  circumstances like the ones here, many of the steps that were taken that allegedly caused a delay

15  of several hours could have been avoided.

16         Accordingly, the Court finds that there are triable issues of material fact as to whether

17  Defendants Ryan, Ochoa and Stratton were deliberately indifferent to Plaintiff's serious medical

18  needs in violation of his Eighth Amendment rights.  Defendant Ryan, Ochoa and Stratton's

19  Motion for Summary Judgment as to Plaintiff's Eighth Amendment medical care claims is

20  **DENIED**.

21                   3.    *Claims against Defendant Pegues*

22         Defendant Pegues, who has filed a joinder to Defendants' Motion, argues that he cannot

23  be held liable for deliberate indifference to Plaintiff's medical needs.  Specifically, Defendant

24  Pegues, as an investigator for the Office of the District Attorney for the County of Imperial,

25  declares that he had "no authority to transport, expedite the transportation of, or delay the

26  transportation of an inmate at Calipatria State Prison to an outside hospital."  (*See* Pegues

27  Declaration at ¶ 10.)  Plaintiff, in response, argues that Defendant Pegues has not been

28  forthcoming and has been evasive in his discovery responses.  (*See* Pl.'s Suppl. Decl. in Support

of Pl.'s Amd. Opp'n at 2-4.)  Plaintiff also states that "the primary claim and allegation against Defendant Pegues is that subsequent to his arrival at CAL and witnessing my gross physical condition, Defendant Pegues purposefully ignored and failed to respond to my severe pain and medical need" by failing to arrange transportation to the hospital.  (*Id.* at 4.)   However, Defendant Pegues was not under the authority of the CDCR and there is no evidence in the record to support the claim that he had the authority, as an employee of the County of Imperial, to remove an inmate from the prison.  Moreover, Plaintiff offers no evidence to dispute Defendant Pegues' assertion that he "was not involved in any decision to take plaintiff Rodney Wayne Jones to an outside hospital."  (*See* Pegues Decl. at ¶ 9.)

Accordingly, Defendant Pegues' Motion for Summary Judgment as to all claims against him is **GRANTED**.

### G.     Retaliation Claims

#### 1.     *Claims against Defendants Jimenez and Ritter*

Defendants Jimenez and Ritter seek summary judgment as to Plaintiff's retaliation claims against them.  (*See* Defs.' P&A's in Supp. of Mot. at 16-17.)  Plaintiff claims that Defendants Jimenez and Ritter retaliated against him by fabricating disciplinary reports.  (*See* FAC at 10.)

"[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).

Defendants Jimenez and Ritter argue that the actions they took could not be considered "adverse" to Plaintiff.  Specifically, they maintain that the reports they drafted were not "first-hand" accounts of the incident, but rather they "merely summarized information provided by others, and provided information regarding photographs taken." (*See* Defs.' P&A's in Supp. of Mot. at 15.)  Plaintiff argues that these reports were "embellished."  (*See* Pl.'s Amd. Opp'n at

11.)  Because these reports were used in charging Plaintiff with a disciplinary infraction, regardless of whether the reports were summaries of other reports and photographs, there is a triable issue as to whether they could be viewed as "adverse actions" against Plaintiff.  *Rhodes*, 408 F.3d at 567-68.

Defendants argue that even if there was an "adverse action" against Plaintiff, there was a "legitimate correctional goal in having an incident commander summarize first-hand accounts and gather the documents together."  (Defs.' P&A's in Supp. of Mot. at 15.)  Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  *Pratt v. Rowland*, 65 F.3d 802, 806-807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  Thus, the burden is on the prisoner to establish facts which demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of."  *Id.* at 808. Plaintiff offers no evidence to meet his burden of proof to overcome Defendants' assertion that they acted with a legitimate penological purpose when they summarized the reports.  Accordingly, Defendants' Jimenez and Ritter's Motion for Summary Judgment as to Plaintiff's retaliation claims is **GRANTED**.

### 2.    *Claims against Defendant Price*

Plaintiff alleges Defendant Price interviewed him on June 13, 2005 regarding the alleged assault by Defendant Sandoval.  (*See* Pl.'s FAC at 12.)  Plaintiff contends that "soon thereafter," Defendant Price, along with other "unidentified CAL staff members," destroyed Plaintiff's "appliances and other tangible personal property" in retaliation "for the allegations made against their fellow Officers."  (*Id.*)

Defendant Price argues that there is no evidence she took any "adverse action" against Plaintiff.  (*See* Defs.' P&A's in Supp. of Mot. at 16.)  In her declaration, Defendant Price declares that her duties as the Administrative Segregation Unit Lieutenant "did not include processing inmates' property when they were transferred from the general population to Administrative Segregation."  (Price Decl. at ¶ 3.)  Morever, Defendant Price declares that she "did not destroy any of inmate Jones' property."  (*Id.* at 4.)  Plaintiff disputes this claim and states "the issue here is Defendant Price's act of destroying Plaintiff's personal property in

retaliation for Plaintiff exercising his First Amendment rights."  (Pl.'s Amd. Opp'n at 12.)
Plaintiff claims the timing of the alleged destruction of his property shortly after he was
interviewed by Defendant Price and her "refusal to respond to Plaintiff's Request for Admissions
regarding CAL procedure for destroying inmates' personal property" is sufficient to survive
Defendants' motion for summary judgment.  (*Id*.)

Plaintiff must provide sufficient evidence to show a causal connection between the
allegedly retaliatory conduct and the action that purportedly provoked the retaliation.  In fact,
a plaintiff must produce sufficient evidence to show that the protected conduct was a
"substantial" or "motivating" factor in the defendant's decision to act.  *Soranno's Gasco v.
Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Here, Plaintiff has not provided any evidence that
links Defendant Price to the alleged deprivation of his property beyond mere speculation.

Moreover, even if Plaintiff were able to provide evidence to support the first four
elements of his retaliation claim,  Plaintiff has failed to produce evidence sufficient to show that
any of the named Defendants acted in the absence of a legitimate penological goal.  *Barnett*, 31
F.3d at 815-16.  As stated previously, courts must "'afford appropriate deference and flexibility'
to prison officials in the evaluation of proffered legitimate penological reasons for conduct
alleged to be retaliatory."  *Pratt,* 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482
(1995)).  Thus, the burden is on the prisoner to allege facts which demonstrate "that there were
no legitimate correctional purposes motivating the actions he complains of."  *Id.* at 808.

Plaintiff has not met his burden of proof to demonstrate that Defendant Price took an
"adverse action" against him or that any of the named Defendants acted without a legitimate
penological purpose.  Accordingly, Defendant Price's Motion for Summary Judgment as to
Plaintiff's retaliation claims is **GRANTED**.

> ### 3. Claims against Defendants Martinez, Valenzuela and Rangel

After the alleged incident in this matter occurred, Plaintiff was transferred to Centinela
State Prison ("CEN") where Defendants Martinez, Valenzuela and Rangel are correctional
officers.  (*See* FAC at 14.)  Plaintiff claims that these Defendants verbally harassed him,
interfered with his legal mail and denied him adequate access to the prison law library.  (*Id.*)

Plaintiff claims that Defendant Valenzuela's acts of retaliation against him were "stemming from the June 10, 2005 attack upon Plaintiff." (FAC at 14.)  Plaintiff fails to identify any evidence that would demonstrate how the "June 10, 2005 attack upon Plaintiff" would be considered "protected conduct."  *See Rhodes*, 408 F.3d at 567-68.  As to Defendants Martinez and Rangel, Plaintiff never makes clear the reason he believes that they were hindering his access to the law library or interfering with his mail.  Further, while he alleges they engaged in this behavior, he does not point to any conduct on his part, other than his involvement in the incident at Calipatria, that could be considered "protected conduct."  *Id.*  In essence, Plaintiff fails to provide any reasoning in his First Amended Complaint as to what "started" the alleged behavior on Martinez and Rangel's part other than his involvement in an assault at another prison.  As stated above, a plaintiff must produce sufficient evidence to show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act.  *Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Here, the "conduct" Plaintiff refers to is these Defendants' alleged knowledge that Plaintiff had an incident involving force while he was housed at another prison. (*See* FAC at 14.)  There are no allegations, or evidence, to support a claim that Valenzuela, Martinez or Rangel were retaliating against Plaintiff because Plaintiff was engaging in "protected conduct."  *Soranno's Gasco*, 874 F.2d at 1314.

In his Amended Opposition, Plaintiff now suggests that Defendants were retaliating against him for filing administrative grievances. (*See* Pl.'s Amd. Opp'n at 15.)  These claims were not made in Plaintiff's First Amended Complaint and Plaintiff cannot simply seek to introduce entirely new allegations in his Opposition in an attempt to rebut Defendants' arguments.  Unsworn allegations in the pleadings are not facts that can be used to defeat summary judgment.  *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996).

Accordingly, Defendants' Martinez, Rangel and Valenzuela's Motion for Summary Judgment as to Plaintiff's retaliation claims is **GRANTED**.

### H.    Access to Courts Claims

Defendants Martinez, Rangel and Valenzuela also seek summary judgment on Plaintiff's access to courts claim.  Plaintiff appears to predicate this claim on the basis that these

Defendants' actions caused his state law claims to be "dismissed by the United States District Court with Prejudice." (FAC at 15.) Defendants argue that Plaintiff has not connected any of their actions to Plaintiff's alleged failure to timely file a lawsuit to protect his state law claims. (*See* Defs.' P&A's in Supp. of Mot. at 16.) Plaintiff maintains in his Opposition that this Court dismissed Plaintiff's state law claims with prejudice in this action. (*See* Pl.'s Amd. Opp'n at 14.)

Prison officials who deliberately interfere with the transmission of a prisoner's legal papers, or deny him access to a legitimate means to petition for redress for the purpose of thwarting his litigation may violate the prisoner's constitutionally protected right to access to the court. *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996); *Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994). However, Plaintiff must be able to demonstrate a specific actual injury involving a nonfrivolous legal claim, *Lewis*, 518 U.S. at 351-55, and must allege facts showing that he "could not present a claim to the courts because of the [Defendants'] failure to fulfill [their] constitutional obligations." *Allen v. Sakai*, 48 F.3d 1082, 1091 (9th Cir. 1994). An actual injury will exist only if "a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353 & n.3. Thus, an inmate must plead facts sufficient to show that prison officials have actually frustrated or impeded a nonfrivolous attack on either his sentence or the conditions of his confinement. *Id.* at 352-53.

In dismissing Plaintiff's state law claims on September 25, 2008, the Court stated that in order to preserve his state law claims, Plaintiff had to "institute a suit within six months of notice" of the rejection of his claims by California Victim Compensation and Government Claims Board. (*See* Sept. 25, 2008 Order Adopting Report and Recommendation Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiff's Complaint at 8-9.) The Court found that Plaintiff's deadline to institute an action based on his state law tort claims was March 6, 2007 and that he failed to file this action until June 4, 2007. (*Id.*)

Plaintiff's access to courts claim fails for several reasons. First, it does not appear that Plaintiff has suffered an "actual injury" as defined by the Supreme Court in *Lewis*. The right of access is only guaranteed for certain types of claims: direct and collateral attacks upon a conviction or sentence, and civil rights actions challenging the conditions of confinement.

1    *Lewis*, 518 U.S. at 354.  Here, Plaintiff is challenging the dismissal of his state law tort claims

2    which is neither a challenge to his conviction nor an action that involves his civil rights.

3        Moreover, Plaintiff has failed to point to evidence in the record showing that these

4    Defendants played any role in the dismissal of Plaintiff's state law tort claims.  Plaintiff claims

5    that Defendants were hindering his ability to bring the state law claims because of their ongoing

6    actions "which continued until June 28, 2007" which is the final date that his grievances against

7    these Defendants were exhausted.  (*See* Pl.'s Amd. Opp'n at 13.)  Plaintiff also relies on

8    evidence that Lieutenant Webb and Warden Giurbino, after an investigation, determined that

9    based on the actions of Defendants Rangel and Martinez, "Inmate JONES has been denied

10   meaningful and equal access to the courts by virtue of not being allowed to attend Law Library

11   commensurate with similarly situated inmates."  (*See* Pl.'s Amd. Opp'n, Appendix "G,"

12   Confidential Supplement to Appeal, dated March 16, 2006, Log No. CEN-C-06-0098.)  The

13   report goes on to state "Sgt. Martinez' written denial of access to the law library was

14   inappropriate and is not within his scope of authority."  (*Id.*)  Plaintiff notes in his Opposition

15   that Defendants failed to provide this report to the Court in support of their Motion for Summary

16   Judgment. (*See* Pl.'s Amd. Opp'n at 13.) Defendants argue that the addition of these grievances

17   does not "make any difference." (Defs.' P&A's in Supp. of Reply at 7.)

18       While the documentation supplied by Plaintiff is troubling, he has still failed to point to

19   any evidence in the record showing that there was any action on the part of Defendants that

20   caused him to bring his state law claims three months too late. Plaintiff's documentation

21   indicates that there were issues with these Defendants in hindering his access to the prison law

22   library in 2005 and 2006.  However, Plaintiff did not file his state law claims until he filed this

23   action on June 4, 2007.  Plaintiff does not point to any evidence in the record to support his

24   claim that these Defendants hindered his access to the courts when he filed his untimely state

25   law tort claims in 2007 or that they played any role in his access to the prison's law library

26   anytime after 2006.

27       The Court finds that no genuine issue of material fact exists to show that Defendants

28   Martinez, Valenzuela and Rangel violated Plaintiff's access to courts when his state law tort

07cv1019 JMA

claims were dismissed as untimely.  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).   A person deprives another of a constitutional right under section 1983, where that person "'does an affirmative act, participates in another' s affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007)  (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  The "requisite causal connection may be established" not only by some kind of direct personal participation in the deprivation, but also by setting in motion "a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  *Id.* (citing *Johnson*, 588 F.2d at 743-44).  Here, there is no evidence in the record that demonstrates that any of these Defendants played any role in the delay by Plaintiff in filing his state law tort claims.  Moreover, Plaintiff has failed to show that he suffered an "actual injury" as defined by *Lewis*.  Thus, Defendants' Martinez, Valenzuela and Rangel's Motion for Summary Judgment as to Plaintiff's access to courts claim is **GRANTED**.

## V.

### REMAINING CLAIMS AND DEFENDANTS

The following will set forth the remaining claims and Defendants in this matter: (1) Plaintiff's Eighth Amendment excessive force claims against Zills, Schommer, Ortiz, Rodiles, Mejia, Sandoval and Andalon; (2) Plaintiff's Eighth Amendment failure to protect claims against Defendants Jimenez, Zills, Schommer, Ortiz, Rodiles, Mejia, Sandoval, Castaneda and Bell; (3) Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Ryan, Ochoa, Mejia, Bell and Stratton; and (4) Plaintiff's First Amendment retaliation claims against Defendants Zills, Schommer, Ortiz, Rodiles, Wells and Flores.

/ / /

/ / /

/ / /

/ / /

07cv1019 JMA

# VI.

## CONCLUSION AND ORDER

For all the reasons set forth above, the Court hereby:

(1)      **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment failure to protect claims against Defendants Wells, Cosio and Andalon pursuant to FED.R.CIV.P. 56;

(2)      **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment failure to protect claims against Defendants Castenada, Jimenez and Bell pursuant to FED.R.CIV.P. 56;

(3)      **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment excessive force claims against Defendant Castenada pursuant to FED.R.CIV.P. 56;

(4)      **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Bell, Ryan, Ochoa and Stratton pursuant to FED.R.CIV.P. 56;

(5)      **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Jimenez, Wells, Castaneda, and Cosio pursuant to FED.R.CIV.P. 56;

(6)      **GRANTS** Defendant Pegues' Motion for Summary Judgment as to all claims against him pursuant to FED.R.CIV.P. 56;

(7)      **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claims against Defendants Jimenez, Ritter, Price, Martinez, Rangel and Valenzuela pursuant to FED.R.CIV.P. 56; and

(8)      **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's access to courts claims against Defendants Martinez, Valenzuela and Rangel pursuant to FED.R.CIV.P. 56.

/ / /

/ / /

/ / /

07cv1019 JMA

(9)    Because there are no remaining claims against Defendants Pegues, Baily, Cosio, Ritter, Harmon, Duarte, Price, Martinez, Valenzuela and Rangel, and there is no just reason for delay, the Clerk of Court is directed to enter a final judgment as to these Defendants  pursuant to FED.R.CIV.P. 54(b).

**IT IS SO ORDERED.**

DATED:  January 24, 2011

Jan M. Adler
U.S. Magistrate Judge

07cv1019 JMA